IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FOSTER WILLIAMS DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-569-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On January 2, 2009, Foster Williams Daniels, ("Plaintiff" or "Daniels") applied for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act ("the Act") alleging disability beginning on December 12, 2008. (Tr.18, 120-25). Daniels applications were initially denied on March 24, 2009. (Tr. 55-59). Daniels timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on June 17, 2010. (Tr. 15-26). The Appeals Council denied Daniels request for review, which made the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 1-4). Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.

1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption that the Commissioner's conclusions of law are valid.  *Id*.; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

    The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

At the hearing before the ALJ, Daniels testified that he was 54 years old and completed the eleventh grade. (Tr. 35). Daniels also testified that he was single and previously in the military. (Tr. 36-37). Daniels prior work includes driving a forklift, wrapping pallets and construction work. He last worked in March 2008, as a forklift driver, and he stopped working after he was diagnosed with neurological sarcoidosis. (Tr. 36, 38). Daniels claims his condition led to headaches and that he eventually began passing out. He reported having syncope spells every two to three months. (Tr. 41).

Daniels also testified that he treated his condition with prednisone and that during a typical day, he ate, took his medications, fed his dog, and then slept all day because the medications he takes make him drowsy. (Tr. 40, 41). Daniels explained that he lives with his mother and does no housework. (Tr. 41). Daniels testified that he could lift 10-

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

15 pounds, sit "about an hour or two, or a half hour, or something like that", stand 30 minutes and walk about a block. (Tr. 43-44). He testified that he has headaches two or three times per week and his gout flares up once or twice a month. (Tr. 44-45).

Linda Williams, a vocational expert, ("VE") testified that Daniels' past work as a forklift operator was medium and semi-skilled, his construction work was heavy and unskilled and his work as a wrapper was medium and unskilled. (Tr. 47-48). The ALJ asked the VE to assume a person of Daniel's age, education, and past relevant work, who could perform light work, but could not climb ladders, ropes or scaffolds, nor work at unprotected heights, nor with hazardous machinery. The ALJ then asked the VE whether this person would be able to perform Daniels' past work. The VE responded, "No, sir." (Tr. 48). Then the ALJ asked the VE whether there would be any jobs this person could perform. The VE responded that this person could work as an inspector, small parts assembler, and cafeteria attendant. (Tr. 48-49).

The ALJ found that Daniels had not engaged in substantial gainful activity since December 12, 2008, the alleged onset date. (Tr. 20). The ALJ further found that Daniels has "severe" impairments of "vasovagal syncope; history of renal mass; hypertension; left ventricular hypertrophy; hydrocele of the scrotum; history of cerebrovascular accident; and gout", but that he does not have an impairment or combination of impairments that meets or equals a listing. (Tr. 20). Finally, the ALJ concluded "[a]fter careful consideration of the entire record," that Daniels has the residual functional capacity ("RFC") to perform light work with the exceptions as follows: "no climbing ropes,

ladders, or scaffolds; no working at unprotected heights; and no working with hazardous machinery." (Tr. 21).

## IV.  MEDICAL HISTORY

In May 2008, Plaintiff began complaining of a swollen right testicle to treatment providers at the Department of Veterans Affairs ("VA"). (Tr. 303). He was diagnosed with hydrocele (a fluid-filled sack in the scrotum) and in early September 2008, he underwent a hydrocelectomy (removal of the fluid-filled sack in the scrotum). (Tr. 275). In November 2008, his wound had healed well. (Tr. 206).

In mid-September 2008, Plaintiff was admitted to the VA after he presented with "visual changes and pain in left eye, numbness over entire forehead and weakness and sensation over left extremities." (Tr. 385).  He was ultimately diagnosed with neurosarcoidosis[5]. (Tr. 385-86). He was prescribed Prednisone. (Tr. 207). In early October, Plaintiff followed up with his primary care physician at the VA, Jayesh Patel, M.D., who diagnosed, among other things, gout and hypertension with a mildly elevated systolic blood pressure. (Tr. 208). Dr. Patel noted Daniels gout was "stable" and advised Daniels to "avoid alcohol". *Id.*

In December 2008, plaintiff presented to the Jackson Hospital Emergency Department three times with complaints of a headache and blurred vision. (Tr. 617-731). The medical diagnosis was that plaintiff suffered from headache and bilateral temporal

---

[5] Neurosarcoidosis is a manifestation of scarcoidosis– a chronic inflammatory disorder – in the nervous system, which can result in, among other things, fatigue, dizziness, and vertigo, double vision or other vision problems, headache, seizures, abnormal sensations or weakness in any part of the body. *See* PubMed Health, Neurosarcoidosis, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001736/

lobe anterior masses slightly improved from a CT scan a couple of months prior. (Tr. 627).

In February 2009, Plaintiff presented to Shin Oh, M.D., a professor of neurology at the University of Alabama Birmingham. (Tr. 613-14). Dr. Oh diagnosed neurosarcoidosis and reported that Daniels' symptoms were well controlled with Prednisone and his neurological examination was completely normal. (Tr. 613). As a result, the doctor reduced Daniels' Prednisone dosage from 60 mg per day to 40 mg per day. (Tr. 613).

In June 2009, Daniels presented to Baptist Health with right elbow pain and swelling. (Tr. 645). Plaintiff reported that he used alcohol every other day. (Tr. 653). He was diagnosed with gout, arthritis and cellulitis of the right upper extremity. (Tr. 653-54). Daniels returned to Baptist Health in October 2009 after he passed out. (Tr. 673). He also report his left hydrocele appeared to come back. (Tr. 674). Ghulam Anwar, M.D., diagnosed vasovagal syncope and hypertension. (Tr. 674).

Finally, in January, 2010, Daniels returned to Jackson Hospital Emergency Department with complaints of chest pain. (Tr. 726). Plaintiff reported that he had passed out at a family gathering. (Tr. 727). He was diagnosed with syncope and sinusitis. (Tr. 729).

## V. Issues

Daniels raises three issues for judicial review:

(1) Whether the ALJ failed to fulfill his duty to develop the record by not providing an RFC supported by a physician's opinion and by not ordering a consultative examination for purposes of establishing an RFC? (*See* Doc.12 at 5).

(2) Whether the ALJ erred in failing to explain the weight given the medical opinions of record. (*See* Doc. 12 at 5).

(3) Whether the ALJ failed to follow the "slight abnormality" standard in finding that Daniels' gout and headaches are non-severe (*See* Doc. 12 at 5).

## VI. DISCUSSION

**The ALJ's Residual Functional Capacity Assessment was Reasonable.**

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis v. Callahan*, 125 F.3d at 1440. The Commissioner's decision is due to be affirmed "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel,* 185 F. 3d 1211, 1213 (11th Cir. 1999). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F. 3d 1208, 1211 (11th Cir. 2005).

Daniels argues that the ALJ erred by not making a residual functional capacity determination which was supported by a treating or examining physician's opinion as required by *Coleman v. Barnhart,* 264 F. Supp.2d 1007, 1010 (S.D. Ala. 2003). (Pl. Br. at 5-8). However, this court has previously addressed this very argument in *Daniels v.*

*Astrue*, 2012 WL 353756 (M.D. Ala. 2012), and distinguished *Coleman* on the basis of its facts and because the *Coleman* court gave no citation to any source of law requiring a physician's assessment for the purposes of making an RFC determination. *Id.* *4.

This court further explained that it was persuaded by the reasoning of Judge Foy Guin in *Langley v. Astrue,* 777 F .Supp.2d 1250, 1257-60 (N.D. Ala. 2011). Indeed, *Langley* disagreed with the *Coleman* reasoning finding that it "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Daniels, supra*, at * 5 citing *Id.* at 1260. (Citations omitted). Accordingly the Court concludes that the ALJ did not err in finding Plaintiff's RFC without the benefit of a physician's assessment in the record.

Daniels further argues that the ALJ erred by not ordering a consultative examination for the purpose of establishing an RFC. At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988). (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision). The Commissioner's duty to

develop the record includes ordering a consultative examination if one is needed to make an informed decision. *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984). However, where no physician recommends an additional consultation and the record is sufficiently developed for the ALJ to make a determination, the failure to order an additional consultative examination is not error. *Good v. Astrue,* 240 Fed. Appx. 399,*3 (11th Cir. 2007) citing *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999). The court finds there is no evidence in the record that any physician recommended Daniels undergo a consultative exam. The court also finds that the ALJ carefully considered the entire record, including all the medical evidence, which he summarized in detail, (Tr. 21-24) in finding Daniels had the RFC to perform light work with some limitations. (Tr. 21). Accordingly, the court concludes Daniels' argument that the ALJ erred by failing to order a consultative exam is without merit; and that based upon a review of the record as a whole, the ALJ's RFC finding is supported by substantial evidence. *Moore,* 405 F.3d at 1211.

**The ALJ adequately explained the medical opinions of record.**

The Plaintiff also argues that the ALJ erred because he failed to explain the weight accorded to any of the medical opinions of record other than that of Dr. Oh (Pl. Brief at p 9). Discretion is given to the ALJ because the Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'" *Dyer*

*v. Barnhart,* 395 F.3d 1206,1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561). Even so, here, the ALJ summarized all Daniels' medical evidence in detail. (Tr. 21-24).

In addition, Daniels points to no specific piece of opinion evidence which he claims the ALJ failed to sufficiently articulate the weight which the ALJ gave to the evidence. Moreover, as Daniels recognizes there is no functional capacity evaluation in the record. (Pl. Br. at 5-9). Daniels, instead, points generally to hundreds of pages of treatment notes which include his subjective complaints and various diagnoses. (Pl. Br. at 11). Indeed, the evidence identified by Daniels', merely documents his complaints and the subsequent medical treatment provided for these complaints. *Id.* This evidence does not constitute "opinion" evidence, which must include statements about "what you can still do despite impairment(s), **and** your physical or mental restrictions." *See* 20 C.F.R. § 404.1527(a)(2) (emphasis added). Thus, the court concludes that the treatment records cited by Daniels do not equate to "opinion evidence" and do not trigger the ALJ's obligation to state with "particularity" what weight was afforded such evidence. *See Jones v. Astrue,* 2009 WL4671712, at * 3 (M.D Ala. Dec. 3, 2009) (rejecting the plaintiff's argument that the ALJ was required to state with particularity the weight assigned to "opinion evidence", where the "opinion evidence" at issue did not include any functional limitations).

> **The ALJ did not commit reversible error in finding Daniels' headaches were non-severe.**

Daniels claims that the ALJ erred in finding that his headaches were non-severe. (Pls. Br. 12-15). With respect to Plaintiff's headaches, the ALJ specifically

considered Plaintiff's neurosarcoidosis, which can cause headaches among other symptoms. *See* PubMed Health, Neurosarcoidosis, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001736/. The record, however, does not reflect that Plaintiff experiences functional limitations from his headaches. Rather, Dr. Oh opined that Plaintiff had an unremarkable neurological examination and his symptoms of neurosardoidosis were well controlled with medication. (Tr. 24, 613). *See Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988). (A remediable or controllable medical condition is generally not disabling.) (Citations omitted). Also the record does not reflect that Plaintiff received sustained treatment for headaches other than being prescribed medication. *See Giles ex rel. Dowdell v. Barnhart,* 182 F. Supp. 2d 1195, 1200 (M.D. Ala. 2002). (The court affirmed the ALJ's finding that plaintiff's impairments were "non severe" where "[a]lthough the claimant has been treated for these conditions, the medical records do not document any **long-term** or **sustained** treatment for these conditions nor any restrictions upon the claimant's functioning as a result of these conditions."). (Emphasis in original.).

Regardless of whether the ALJ found headaches to be a severe impairment at step three of the sequential evaluation, it is undisputed that the ALJ specifically discussed the Plaintiff's headaches in his decision. (Tr. 24). *See Newsome ex rel. Bell v Barnhart,* 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006). (Failure of ALJ to make determination as to severity of impairment was harmless error where ALJ thoroughly discussed the evidence of the impairment.) Under agency regulations the ALJ considers all of Plaintiff's impairments, both "severe" and "nonsevere", in the sequential evaluation process. *See* 20

C.F.R.§ 416.923 (In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.)  Accordingly, the court concludes that any error committed by the ALJ with respect to analyzing the severity of Plaintiff's headaches is "harmless", *see Newsome, id.,* at 1201, and that "substantial evidence" supports the Commissioner's decision.  *Miles,* 84 F.3d at 1400.

### The ALJ found Daniels' gout to be severe and considered it in the sequential evaluation process.

The ALJ included gout as a "severe" impairment listed at step three.  (Tr. 20). Furthermore, the ALJ discussed this impairment at step five of the sequential evaluation process where he found Daniels had the RFC to perform light work with exceptions.  (Tr. 21-24).  Specifically, the ALJ noted Daniels' testimony about gout as follows:

> "it flares up one to two times a month and last[s] about four to five days.  The claimant rated his pain as an eight on a ten scale.  He testified that he does not go [to] the emergency room for this pain."

(Tr. 23, 45-46).  The ALJ found gout did not affect Daniels' RFC "due to the lack of treatment and the fact that the claimant does not take any medication nor does he go to the doctor for this impairment." (Tr. 24).

The court notes, however, that the ALJ used the word "non-severe" to describe Daniels' gout in his analysis at step five (Tr. 24), which is contradictory to the finding at step three.  (Tr. 20).  However, immediately preceding this statement the ALJ found

> "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

(Tr. 23-24). Accordingly, the court concludes that in the context of the ALJ's entire analysis at step five, he considered the effect of gout and its symptoms on Daniels' ability to work and did not reconsider his prior finding that gout was "severe". Furthermore, the court concludes that "substantial evidence" supports the Commissioner's decision. *Miles,* 84 F.3d at 1400.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 30th day of April, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE